**Frank MAWBY and Brian Martin, Plaintiffs,**

v.

**Donald AMBROYER, Defendant.**

Civ. No. 82–70962.

United States District Court, E.D. Michigan, S.D.

June 30, 1983.

Frank Mawby, in pro. per.

Brian Martin, in pro. per.

Frank W. Brochert, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This is a civil rights action under 42 U.S.C. § 1983. Plaintiffs Frank Mawby and Brian Martin, former inmates of the Macomb County Jail, allege that their first, eighth, and fourteenth amendment rights were violated by various practices of the jail, including maintaining an inadequate law library, failing to permit contact visits, requiring that outgoing mail be sealed by jail officials rather than prisoners, incarcerating seventeen-year-old inmates with the general inmate population, failing to provide incoming inmates a physical exam, failing to provide religious activities for maximum security inmates, failing to provide smoke detectors in the maximum security section of the jail, restricting the inmates' right to receive magazines, failing to provide opportunity for inmates to exercise, maintaining the plumbing and bathing facilities in a substandard manner, and failing to maintain clothing and linen in accordance with federal standards. Plaintiffs seek declaratory and injunctive relief as well as both punitive and compensatory damages. Since plaintiffs have been discharged from the Macomb County Jail, their claims for declaratory and injunctive relief are rendered moot. *DeFunis v. Odegaard,* 416 U.S. 312, 316–20, 94 S.Ct. 1704, 1705–07, 40 L.Ed.2d 164 (1974). Plaintiffs' claims for damages, however, are not rendered moot by discharge. *Boag v. MacDougall,* 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982).

The defendant, Administrator of the Macomb County Jail, answered the plaintiffs' complaint and filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Plaintiffs filed a response to the defendant's motion, and the case was referred to Magistrate Steven W. Rhodes for his report and recommendation. On March 22, 1983, Magistrate Rhodes issued his report and recommended that the following claims be dismissed: the claim that the law library is inadequate, the claim that seventeen-year-old inmates are housed with adult inmates, the claim regarding physical examinations, the claim that religious services are unavailable to maximum security inmates, the structural defects claims, and the claims of inadequate clothing and linen. The magistrate further recommended that plaintiffs file answers to specified questions concerning certain claims and that defendant's motion to dismiss these claims be held in abeyance pending plaintiffs' response.

Plaintiff Mawby filed timely objections and answers to the magistrate's report with this Court, which is now required to review the objections de novo pursuant to the provisions of the Magistrate's Act, 28 U.S.C. § 636(b)(1). *See Gioiosa v. United States,* 684 F.2d 176 (1st Cir.1982). Plaintiff Martin failed to object to the magistrate's report and recommendations, and such failure to object waives his right to appeal. In *United States v. Walters,* the Sixth Circuit stated that "the fundamental congressional policy underlying the Magistrate's Act—to

improve access to the federal courts and aid the efficient administration of justice—is best served by our holding that a party shall file objections with the district court or else waive right to appeal." 638 F.2d 947, 949–50 (6th Cir.1981).

This case is before the Court on the defendant's motion for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c). Defendant submitted an affidavit with attached exhibits, such as Standard Operating Procedures of the jail and an inspection report from the Michigan Department of Corrections. Because matters outside the pleadings have been presented to and not excluded by the Court, the motion will be treated as one for summary judgment under Fed.R.Civ.P. 56. For purposes of this motion, facts asserted and supported by the plaintiffs are regarded as true. *Day v. UAW,* 466 F.2d 83 (6th Cir.1972). The exhibits which tend to controvert plaintiffs' allegations need not be considered by this Court. Plaintiffs' allegations must be examined in light of these principles to determine whether they state a claim under the Civil Rights Act, 42 U.S.C. § 1983.

Frank Mawby was incarcerated in the Macomb County Jail from February to May, 1981, and from February to April, 1982. On the latter occasion, Mawby had been returned to the jail from Jackson State Prison for an evidentiary hearing on whether to vacate a guilty plea. Although he was not a permanent inmate, Mawby was not a pretrial detainee, having already been convicted. Pretrial detainees are protected by the Due Process Clause from incarceration under conditions which constitute "punishment," a protection not afforded inmates already convicted. *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). Convicted inmates are primarily protected by the Eighth Amendment's prohibition of cruel and unusual punishment. *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). Thus, convicted inmates may be punished so long as their punishment is not cruel and unusual.

Plaintiff alleges that the jail law library is inadequate because pages have been torn out of books and there is no way to update the law, i.e., the library does not contain Shepard's Citations. Defendant admits that some pages have been torn out from the law books, but states that those pages have been torn out by prisoners. Standard Operating Procedures submitted by the defendant essentially admit that, aside from a few advance sheet editions, the law library does not contain the relevant Shepard's Citations. This issue was addressed by *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), wherein the Supreme Court held that prisoners' right of access to the courts requires that states provide law libraries or alternative sources of legal knowledge. The Court did not prescribe which materials a prison law library must contain and stated that a law library need not be provided where other methods, e.g., professional or quasi-professional legal assistance, assure meaningful access to the courts. *Bounds,* 430 U.S. at 830, 97 S.Ct. at 1499. *See Holt v. Pitts,* 702 F.2d 639 (6th Cir.1983). The defendant's list of legal materials in the library indicates that caselaw and statutory compilations relevant to prisoners' claims are provided. The library includes the Northwest Reporter 2d Series (1960-date), Michigan Criminal Law and Procedure (2d ed.), Wharton's Criminal Procedure, Michigan Court Rules Annotated, Michigan Compiled Laws Annotated Vols. 1–2 (Michigan Constitution), Black's Law Dictionary, Complete Manual of Criminal Forms, Prisoner's Rights Sourcebook, How to Find the Law (7th ed.), Perkins on Criminal Law and Procedure (4th ed.), Federal Habeas Corpus (2d ed.), and several volumes of Michigan Compiled Laws Annotated. Provision of these materials satisfies the requirements of *Bounds v. Smith.* It is not to be expected that jails provide law libraries comparable to those in our law schools, and this notion is reflected in the rule that a *pro se* prisoner's pleading is judged under less stringent standards. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

Plaintiffs also contend that denial of their requests for contact visits while incarcerated was unconstitutional. A district court sitting in this district, applying the conceptual framework of *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), recently held that contact visitation implicates no express constitutional right, even where denied to pretrial detainees. *O'Bryan v. County of Saginaw, Mich., (O'Bryan III),* 529 F.Supp. 206, 211 (E.D. Mich.1981). The Supreme Court has cautioned that "the inquiry of federal courts into prison management must be limited to the issue of whether a particular system violates any prohibition of the Constitution.…" *Bell v. Wolfish,* 441 U.S. at 562, 99 S.Ct. at 1886. The Sixth Circuit has held that prison procedures and practices regarding visitation are "precisely the sort of 'judgment calls' regarding prison management that *Bell v. Wolfish* requires to be left to the expertise of prison administrators." *Weaver v. Jago,* 675 F.2d 116, 117 (6th Cir.1982).

■ A prisoner's conditions are to be judged under the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment depending on whether he has undergone a formal adjudication of guilt. *Ingraham v. Wright,* 430 U.S. 651, 671–72 n. 40, 97 S.Ct. 1401, 1412–13 n. 40, 51 L.Ed.2d 711 (1977). Under the latter standard, the test is whether the prison's restriction is "imposed for the purpose or with the intent of punishing the pretrial detainees at the jail." *O'Bryan III,* 529 F.Supp. at 212. Assuming *arguendo* that this standard should be applied,[1] there is no allegation that the policy against contact visits was ever intended as punishment. On the other hand, "[c]ontact visitation for convicted prisoners is a matter within the discretion of prison officials." *McMurry v. Phelps,* 533 F.Supp.

742, 765 (W.D.La.1982). *Accord McCray v. Sullivan,* 509 F.2d 1332 (5th Cir.), *cert. denied,* 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975); *Walker v. Pate,* 356 F.2d 502 (7th Cir.), *cert. denied,* 384 U.S. 966, 86 S.Ct. 1598, 16 L.Ed.2d 678 (1966). Since they have alleged no improper motive on the part of jail officials, plaintiffs' allegations that they were denied contact visits do not rise to the level of constitutional deprivations. Defendant's motion will be granted on this issue.

■ Plaintiffs' next complain that inmates are prohibited from sealing their outgoing mail. Defendant's Standard Operating Procedure # 63 states that jail staff will not read the mail before sealing it, but will only check for contraband.[2] The procedures also state that an inmate shall be allowed to send unopened mail to public officials or counsel representing him. Plaintiff clearly alleges that this latter procedure was violated by jail staff because his correspondence to the State Appellate Defenders, the U.S. District Court in Detroit, the Judicial Tenure Commission, the Michigan Supreme Court, the Attorney Grievance Commission, Appellate Counsel, and others, could not be sealed. Although the jail's staff apparently violated the Standard Operating Procedure, this alone cannot amount to a constitutional deprivation actionable under § 1983. The challenged conduct must constitute a constitutional violation on their own; the procedures themselves cannot constitute a separate constitutional interest the violation of which is actionable. *See Bills v. Henderson,* 631 F.2d 1287 (6th Cir.1980).

■ In *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Supreme Court addressed the issue of censorship of prisoners' correspondence. The Court held that censorship of prisoner mail

---

1. Although he had been convicted, plaintiff Mawby's status was similar to that of a pretrial detainee since he was temporarily incarcerated at the Macomb County Jail for the purpose of attending an evidentiary hearing to vacate a guilty plea.

2. Jail staff are permitted to *read* inmates' mail under certain circumstances, e.g., where the inmate is a suicidal risk or where the mail concerns plotting against the good order and security of the jail. Since plaintiffs have not alleged that their mail was read, the constitutionality of these provisions need not be considered.

is justified only if in conformity with certain criteria. Although the practices in the present case are content-neutral, in contrast with *Procunier* where mail would not be sent depending upon its content, the same criteria may be fruitfully applied. *Procunier* sets up a two-part inquiry: "First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression.... Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.* at 413, 94 S.Ct. at 1811. Here, the governmental interest is to stop contraband from being sent from the jail. This interest cannot be given great weight because, as plaintiffs sensibly point out, there is little contraband to be sent from a jail. The limitation on inmates' First Amendment rights is substantial. *See Guajardo v. Estelle,* 580 F.2d 748, 757–59 (5th Cir.1978). Inmates have an expectation that correspondence with their counsel and public officials will be confidential. The jail's alleged practice of not sending such mail unless submitted unsealed by the inmates may deter such correspondence, thereby implicating not only First Amendment rights but the inmates' right of access to the courts as emphasized in *Bell v. Wolfish, supra.* Balancing the respective interests of jail officials and inmates, plaintiffs' allegations, if proved, would constitute a deprivation of constitutional rights actionable under § 1983. Defendant's motion to dismiss will be denied on this issue.

■ Plaintiffs next allege that the jail officials incarcerated seventeen-year-old inmates with the general inmate population. However, it is unnecessary for this court to reach the issue of whether this practice would constitute a constitutional deprivation. Magistrate Rhodes concluded that defendant's practices do not violate the Constitution since it is permissible to house seventeen-year-old inmates in separate cells within the same jail which houses adults. Plaintiff Martin, who was seventeen-years-old when incarcerated in the jail did not object to the Magistrate's conclusions and recommendations. Plaintiff Mawby, who did object to the Magistrate's report and recommendations, was twenty-seven years of age while incarcerated in the jail and therefore has no standing to challenge the jail procedures. A plaintiff must assert his own legal interests rather than those of third parties. *See Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Tileston v. Ullman,* 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). Defendant's motion to dismiss will be granted on this issue.

■ Plaintiffs also claim their constitutional rights were violated by defendant's failure to provide incoming inmates with a physical exam. The standards under which this claim must be considered are set forth in *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976): "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Plaintiffs in this case have alleged that the booking officer at the jail who gives each incoming inmate a medical questionaire is not trained in medicine. Such allegations are clearly insufficient under *Gamble* since there is no claim that plaintiffs actually have been denied treatment of any serious medical needs. Plaintiffs claim illiterate inmates cannot fill out the forms, but there is no allegation that jail officials have ever shown deliberate indifference to an oral request by an inmate for medical treatment. The defendant's motion to dismiss will be granted on this issue.

■ Plaintiffs next allege that the jail fails to provide group religious services for maximum security inmates and that this violates their first amendment rights. The jail does allow such services for minimum and medium security inmates. As a general rule, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty." *Cruz v. Beto,* 405 U.S.

319, 322 n. 2, 92 S.Ct. 1079, 1081 n. 2, 31 L.Ed.2d 263 (1972). However, a prisoner does not have an absolute right to practice his religion in accord with his desires; the needs of the institution and penological objectives must be balanced against the right of the individual prisoner. *Jihaad v. O'Brien,* 645 F.2d 556, 564 (6th Cir.1981). Several courts have held that a denial of group religious services is not arbitrary or unreasonable. *See McDonald v. Hall,* 579 F.2d 120, 121 (1st Cir.1978); *Sweet v. South Carolina Dept. of Corrections,* 529 F.2d 854, 864 (4th Cir.1975). Defendant offers no specific justification for its policy except to claim that refusing to permit inmates in segregation to attend religious services is reasonable. The Sixth Circuit, however, requires that defendant "must do more than simply offer conclusory statements that a limitation on religious freedom is required for security, health or safety in order to establish that its interests are of the 'highest order.'" *Weaver v. Jago,* 675 F.2d 116, 119 (6th Cir.1982). Defendant's motion to dismiss will be denied on this issue.

■ Plaintiffs also allege that the physical condition of the jail is inadequate, i.e., there are no smoke detectors in the maximum security section, and plumbing and bathing facilities are maintained in a substandard manner. While defendant admits that smoke detectors are only installed in the minimum security section of the jail, the state inspection report attached to defendant's affidavit indicates the jail's physical condition complies with state regulations. This claim should be dismissed pursuant to defendant's motion. *See Inmates, Washington County Jail v. England,* 516 F.Supp. 132, 143 (E.D.Tenn.1980), *aff'd without op.,* 659 F.2d 1081 (6th Cir.1981).

■ Plaintiffs also allege that clothing and linen at the jail are not "up to standards." The magistrate, however, found that such a claim does not rise to the level of a claim of cruel and unusual punishment under the Eighth Amendment. Plaintiffs do not object to this finding, and the magistrate's conclusions will be accepted on this

issue. Defendant's motion to dismiss this claim will be granted.

■ The next allegation raised by plaintiffs is that defendant restricts the magazines which inmates may receive. Plaintiff Mawby claims to have been denied permission to receive the magazines Playboy, Penthouse, and National Lampoon. Defendant's Standard Operating Procedures contain certain guidelines for accepting publications into the jail, one reason for which is to prohibit materials which would threaten or cause harm to the safety of the facility or the persons therein. The guidelines prohibit inmates from receiving publications which (1) describe how to make weapons or escape tools, (2) advocate violence, (3) describe or show sexual acts, (4) advocate racism, or (5) instruct in the martial arts. While pretrial detainees have a constitutional right to receive publications which are available to the public generally, *see O'Bryan v. County of Saginaw, Mich.,* 437 F.Supp. 582, 600 (E.D.Mich.1977), *remanded,* 620 F.2d 303 (1980), *modified on other grounds,* 529 F.Supp. 206 (1981), subject to reasonable time, place, and manner regulations, *Bell v. Wolfish,* 441 U.S. 520, 552, 99 S.Ct. 1861, 1881, 60 L.Ed. 2d 447 (1979), the right of convicted inmates to receive specific publications may be limited according to the substantial governmental interests of security, order, and rehabilitation. *See Procunier v. Martinez,* 416 U.S. 396, 413–14, 94 S.Ct. 1800, 1811–12, 40 L.Ed.2d 224 (1971); *Goodson v. United States,* 472 F.Supp. 1211, 1212–13 (E.D. Mich.1979). The Supreme Court has indicated that prisoners retain those First Amendment rights which are not inconsistent with their status as prisoners or with the legitimate penological objectives of the correctional system. *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). The Fifth Circuit has suggested that jail officials carry the burden of proving that a particular publication is substantially detrimental to the governmental interest in security, order, and rehabilitation. *Guajardo v. Estelle,* 580 F.2d 748, 761 n. 7. This seems the appropriate standard where First Amendment rights are called into

question. Defendant has failed to meet this burden on this record, so his motion to dismiss will be denied on this issue.

■ Plaintiff's next allegation is that inmates are provided inadequate opportunity for exercise. Plaintiff Mawby contends in his answers to the magistrate's questions that during the approximately seven months he was confined in the jail he was only permitted to exercise outside of his cell on two occasions. This allegation would appear to state a claim under § 1983. Several courts have held that "confinement for long periods of time without the opportunity for regular exercise does as a matter of law constitute cruel and unusual punishment." *Lock v. Jenkins,* 464 F.Supp. 541, 551 (N.D.Ind.1978). *See Campbell v. Cauthron,* 623 F.2d 503 (8th Cir.1980); *Smith v. Sullivan,* 553 F.2d 373 (5th Cir.1977); *Sweet v. South Carolina Dept. of Corrections,* 529 F.2d 854 (4th Cir.1974); *O'Bryan v. County of Saginaw, Mich.,* 437 F.Supp. 582 (E.D. Mich.1977).

In conclusion, defendant's motion for judgment on the pleadings will be granted for the claims concerning (1) the adequacy of the jail law library, (2) jail policies concerning inmate visitation, (3) housing seventeen-year-old inmates with the adult inmate population, (4) physical examination of incoming inmates, (5) the physical condition of the jail, and (6) the condition of clothing and linen at the jail. Defendant's motion will be denied for the allegations concerning the jail's practices regarding inmate correspondence with attorneys and courts, jail policy regarding inmate receipt of magazines, group religious services, and the failure of jail officials to provide adequate opportunity for exercise.

An order will be submitted accordingly.