**Steven John MARKS, Plaintiff,**

v.

**CITY COUNCIL OF the CITY OF CHESAPEAKE, VIRGINIA, et al., Defendants.**

Civ. A. No. 83–286–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

May 31, 1988.

Andrew M. Sacks, Sacks & Sacks, Norfolk, Va., for plaintiff.

Henry C. Morgan, Jr., James B. Lonergan, Pender & Coward, Virginia Beach, Va., Ronald S. Hallman, City Atty., Chesapeake, Va., for defendants.

## OPINION AND ORDER

DOUMAR, District Judge.

Plaintiff, Steven John Marks, filed this action pursuant to 42 U.S.C. § 1983 after the defendant, the City of Chesapeake, Virginia, denied his request for a conditional use permit to operate a fortune telling and palmistry business (a business permitted with a license specified under the Chesapeake City Code) on property he was attempting to purchase. The issue raised is whether the Chesapeake City Council (city council) applied the local land use ordinance in an arbitrary and capricious manner, bearing no reasonable relationship to health, safety and general welfare of the community. The Court, sitting without a jury, heard evidence on December 6 and 14, 1983.

By order of July 25, 1984, this Court conceded that it must abstain from the decision of any federal issues raised in this matter until the plaintiff pursued his remedies in state court. The Fourth Circuit had recently issued a clear mandate that a state forum should hear all questions of land use law before a federal court could hear the claims, even if they regarded primarily federal issues. *Caleb Stowe Assoc., Ltd. v. County of Albemarle, Virginia,* 724 F.2d 1079 (4th Cir.1984). Thus, this Court had no choice but to abstain, notwithstanding both parties' preference to proceed in federal court. The Court was careful to note, however, that plaintiff could preserve his right to present his federal issues to this Court in the event of adverse determinations of state and local law questions. *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 419–22, 84 S.Ct. 461, 466–68, 11 L.Ed.2d 440 (1964). The Court declined to dismiss the action *in toto* pursuant to *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), since the Fourth Circuit had stated that the proper type of abstention in this case is that articulated in *Railroad Comm. of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *See Caleb Stowe Assoc., Ltd. v. County of Albemarle, Virginia,* 724 F.2d 1079 (4th Cir.1984); *Fralin & Waldron, Inc. v. City of Martinsville,* 493 F.2d 481 (4th Cir. 1974). The state court's decision of December 5, 1986 was adverse to Marks and the parties agree that Marks had preserved his right to return to this Court, to be heard on

his federal issues. *Promovision International Films, Ltd. v. Trapani,* 744 F.2d 1063 (4th Cir.1984).

The Court, in its order, recognized that Marks would suffer due to the delay and expense which this forced abstention would cause him. The unfortunate result was the worst of circumstances: Marks lost his interest in the property before his case could return to this Court for adjudication. This Court finds now as it had believed in 1985 that Marks' constitutional rights had been violated by the city council's actions. The disgrace of the course of adjudication in the case at hand, sidetracked by the abstention requirement, is that Marks is not able at this time to enjoy the benefits of this Court's decision as he would have been able to enjoy had this Court been able to decide the case when it was ripe and ready to be heard. This case is a glaring example that justice delayed is unjust. For the reasons stated below, the Court finds that the defendants exceeded their constitutional authority and hereby HOLDS for the plaintiff.

The controlling facts are not in dispute. On April 29, 1982, Marks entered into a sales agreement with the owner of certain property located at 1060 North George Washington Highway in Chesapeake, Virginia. The property, a small residential house, extends approximately 110 feet along a four lane, well-traveled highway and extends back approximately 200 feet. Although the land was zoned for residential use, Marks entered into the sales contract with the intention of using the house as a fortune telling or palmistry business in addition to using the home for a family residence. To accommodate Marks' prospective use, the sales contract contained a clause permitting him as buyer to "apply for a zoning change" necessary to operate a business on the property.

The testimony introduced established that all properties directly surrounding plaintiff's parcel were zoned for commercial use, and that the general surrounding area along George Washington Highway was slated for extensive commercial development by the local government. A bank was located to the right, an abandoned gas station fronted the left edge of the property; across the street was a small convenience store, a field, several apartments and one single family residence.

On May 6, 1982, Marks requested that the property's zoning classification be changed from residential to the business classification B–2 which permitted general business uses, including retail and service establishments. The Chesapeake City Planning Commission (planning commission) unanimously approved the plaintiff's request at a public hearing on June 9, 1982. Marks indicated to the planning commission that the prospective use for the property was for his wife to give "second opinions to people on life, a problem, or whatever." Shortly thereafter, Marks appeared before the city council as the next step in procuring his zoning change. At the city council's July 20, 1982 meeting, he indicated again that he intended to use the property for palmistry. No one opposed his request, and the city council approved his zoning change by unanimous vote. The city council advised him, though, that he must obtain a use permit before he could use the property for palmistry.

Accordingly, Marks applied for a conditional use permit to practice palmistry. On September 8, 1982, the planning commission considered Marks' application for the permit. Mr. Jim Lewis, an attorney, testified in Marks' behalf, observing that Marks had already obtained appropriate zoning. Furthermore, Mr. and Mrs. Marks were professional palmists and licensed by the State of Virginia to practice palmistry, a business allowed by the City of Chesapeake licensing ordinances. Lewis indicated that the Marks anticipated about three clients per day, and that the property included ample parking space. He urged that the use was consistent with public policy goals of the Chesapeake zoning ordinance.

Neither the public nor planning commissioners opposed the conditional use permit request. Indeed, the planning director, Milton A. Perry, stated that approving the permit "would not create a conflict or impact on the neighborhood." He indicated

that palmistry was a legitimate business in Chesapeake, included among B-2 zoning classifications. Accordingly, the planning commission voted 6-3 to approve the conditional use permit.

During the October 19, 1982 public hearing, the city council considered Marks' application for the conditional use permit. Community opposition did appear at this hearing. Eight people spoke to oppose the permit, eighteen others appeared in opposition, but did not speak and a petition indicating opposition by 170 people was presented.

Seven of the eight speakers in opposition based their objections exclusively on religious grounds. One stated that "God's word strongly condemns such practices spoken as an abomination to the Lord, both in the Old Testament and also in the New Testament. So being a Christian, and therefore being concerned about the moral fiber of our city, and basing my convictions on the Word of God, I register our opposition to this permit being granted." Another person stated that palmistry is "witchcraft, it is black magic according to the Word of God and I would not like to see, not only this come into the community and the great City of Chesapeake, but I fear that should this door be opened, we would be setting a precedent for other occult practices." Another speaker quoted the Bible and told the city council that he opposed the permit "because God is opposed to it."

Only the neighbor across the street objected on grounds other than religion. He stated that the area "is our home and it is our neighborhood. We really can't see any good coming out of this type of business. In reading about what they propose to do ... we wonder why bother. We just don't think it is a desirable business for a neighborhood."

Marks and his attorney met this opposition and urged that the plaintiffs had met all the zoning ordinance requirements. Moreover, the planning commission had found that granting the permit would pose no adverse impact on the community, and

that the city council should avoid basing its decision on religious grounds.

Milton A. Perry, Chesapeake's Director of Planning and Inspections, testified at trial regarding the use permit application. Because of his knowledge of the area as well as Chesapeake zoning requirements, and his thorough investigation into the plaintiff's application, his testimony is given great weight and credibility. He is responsible for investigating all zoning and conditional use permit applications. He personally conducted an on-site investigation to study the compatibility the use would have with the neighborhood, as well as the impact on the neighborhood. Perry concluded that the use would have no effect on nearby schools, existing traffic patterns or the neighborhood in general. Perry observed that the property was in an area quickly becoming commercial, an evolution consistent with Chesapeake's comprehensive land use plan. The city council never inquired into the basis supporting the planning commission's approval of the permit.

William C. Barlow, an experienced real estate agent, testified in court and corroborated the testimony that the area was imminently becoming commercial; some residential homes had already been rezoned and converted to business use. Barlow stated that the sales contract was made to be contingent on the approval of the zoning but not the conditional use permit since he expected no problems with the permit's approval. Barlow testified that while some individuals may oppose the permit request, according to his experience, he had expected the use permit would be granted. He had attended the city council's hearing regarding the use permit request, and testified that only two of the eight objecting speakers lived in the area near the property in question.

The city council unanimously denied the request for the conditional use permit. Two city council members testified in support of their votes. Sidney M. Oman, who was Mayor of Chesapeake at the time of the vote, testified that several people had complained about the proposed use prior to

the public hearing. Furthermore, Marks' proposed use would not promote the property's highest economic use since he expected only two or three clients per day. He testified that while the petition opposing the use permit did influence him, he took no consideration of the religious objections. When asked whether the use of the property would affect specific factors listed in the conditional use permit provision § 7–1.1, Mayor Oman testified that the palmistry use would not affect traffic flows, water, schools, police service nor fire protection. The second city council member to testify, Walter Cartwright, Jr., stated that he had been contacted as well before the meeting by many people in opposition to the permit, and he voted not to grant the permit because it would confine the valuable land's use to too limited a benefit.

It has come to the Court's attention that the plaintiff no longer has an interest in the property for which he sought the special use permit. Because of this development, the defendants argue and the plaintiff concedes that an injunctive remedy is no longer appropriate. Defendants argue that a declaratory remedy is inappropriate as well, because when he lost his property, the plaintiff's claims became moot.

■ When injunctive relief has become moot, "a separate inquiry must be made regarding the declaratory relief which has also been sought." *Burgess v. Butz,* 423 F.Supp. 27, 29 (S.D.W.Va.1976) (citing *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 121, 94 S.Ct. 1694, 1697, 40 L.Ed.2d 1 (1974); *Roe v. Wade,* 410 U.S. 113, 166, 93 S.Ct. 705, 733, 35 L.Ed.2d 147 (1973); *Zwickler v. Koota,* 389 U.S. 241, 254, 88 S.Ct. 391, 398, 19 L.Ed.2d 444 (1967)). The Declaratory Judgment Act authorizes federal courts to hear only actual controversies, but "the distinction is one of degree to be determined on a case by case basis." *Nippon Elec. Glass Co. v. Sheldon,* 489 F.Supp. 119, 121 (1980) (courts have given expansive interpretation to allegations of actual controversies) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937); *Wembley, Inc. v. Superba Cravats,*

*Inc.,* 315 F.2d 87, 89 (2d Cir.1963); *Blessings Corp. v. Altman,* 373 F.Supp. 802, 805 (S.D.N.Y.1974) (Bauman, J.)).

Defendants concede that plaintiff's damages claims are not necessarily rendered moot when injunctive and even declaratory contentions have become moot. *See Mawby v. Ambroyer,* 568 F.Supp. 245, 247 (E.D. Mich.1983) (citing *Boag v. MacDougall,* 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); *DeFunis v. Odegaard,* 416 U.S. 312, 316–20, 94 S.Ct. 1704, 1705–07, 40 L.Ed.2d 164 (1974)).

A fairly recent case illustrates the extent to which declaratory relief survives a change in circumstances which may appear to cause the claim to become moot. In *Lane v. Reid,* the inmate plaintiff alleged certain constitutional violations of his confinement, including a transfer from one prison to another because of arbitrary retaliation as well as other actions of prison officials at his former institution. 559 F.Supp. 1047, 1048–51 (S.D.N.Y.1983). The court recognized "that while a prisoner may have no procedural due process rights to a pre-transfer hearing, a state prisoner does have certain substantive federal rights which, even after a transfer is completed, provide the basis of a case or controversy." *Id.* at 1051 (citing *Haymes v. Montanye,* 547 F.2d 188 (2d Cir.1976)). Since the plaintiff had been transferred to a different institution, however, the court realized that the change of circumstances may have caused the controversy not to amount to "adverse interests, of sufficient immediacy and realty to warrant the issuance of a declaratory judgment." *Id.* at 1052 (quoting *Preiser v. Newkirk,* 422 U.S. 395, 402, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975)). The court explained, though, that a claim for declaratory relief remains viable even after complained of conduct is complete, to the extent that the claim's resolution determines liability for damages to redress injuries alleged and proven. *Id.* at 1052 (explaining *Winsett v. McGinnes,* 617 F.2d 996 (3rd Cir.1980)); *accord City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 3254 n. 7, 87 L.Ed.2d 313 (1985) (where claim for injunctive relief may no longer be viable in case

regarding unconstitutional zoning permit denial, case would not become moot because plaintiff had "requested damages as well as an injunction").

Since the *Lane* plaintiff failed to plead for damages, the court found declaratory relief to be moot, although the court did allow the plaintiff to amend his complaint to request damages to salvage his case. *Lane,* 559 F.Supp. at 1052–53.

■ As in *Lane,* plaintiff's request for declaratory relief is not moot because his "damages claim is contingent upon a finding by the court that the [complained of activity] is unconstitutional; for, the crux of [plaintiff's] damages allegations is that the various defendants were responsible for the [unconstitutional application of a zoning ordinance] and, thereby, a deprivation of his constitutional rights." *Shifrin v. Wilson,* 412 F.Supp. 1282, 1291 (D.D.C. 1976) (citing *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (although certain claims had become moot, plaintiff's claim for back pay rested upon determination of constitutionality of complained of action)). Thus, "this Court must decide the constitutional issue in order to make possible a decision on [plaintiff's] damages claim." *Id.* at 1292. *See also Cunningham v. City of Overland, State of Mo.,* 804 F.2d 1066 (8th Cir.1986) (on basis of violation of substantive due process, claim for damages viable even after city's denial of plaintiffs' merchant's license caused plaintiffs to forfeit property for which they had requested license.)

The Court must determine at this point whether Marks was deprived of any constitutional protections when his conditional use permit was denied. He challenges mainly the application of the ordinance rather than its facial validity. His complaint consists of five separate counts, including "that the denial of plaintiff's application by council was based solely upon representations of religious fears and unfounded allegations of witchcraft and wizardry." The plaintiff also complains on grounds of a due process deprivation, an establishment of religion, a denial of freedom of speech, a denial of equal protection and that the ordinance is unconstitutional because it is vague and overbroad.

The Court, after considering the evidence introduced, concludes that the only constitutional violation among these allegations is that the defendants acted arbitrarily and capriciously in denying the permit request.

Although federal courts have hesitated to interfere with local zoning decisions, the Fourth Circuit has recognized that "[a]rbitrariness, abuse of discretion, caprice or unfairness" in zoning decisions can give rise to constitutional claims. *Scott v. Greenville County,* 716 F.2d 1409, 1419 (4th Cir.1983) (citing *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 833 (1st Cir.), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982); *United Land Corp. of America v. Clarke,* 613 F.2d 497, 501 (4th Cir.1980) ("abuse of discretion [or] caprice" in zoning decision may rise to fourteenth amendment claim); *South Guinnett Venture v. Pruitt,* 491 F.2d 5, 7 (5th Cir.1974) (en banc) (dictum) (zoning decision may constitute due process violation where "the action of the zoning commission is arbitrary and capricious"), *cert. denied,* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974)).

Other circuits have similarly found "that a substantive due process claim may be based on the denial of a land use permit." *Littlefield v. City of Afton,* 785 F.2d 596, 606 (8th Cir.1986) (citing *Scott v. Greenville County,* 716 F.2d at 1418–21 (Fourth Circuit finds fourteenth amendment claim in caprice or abuse of discretion in zoning administrator's denial of permit)); *Wilkerson v. Johnson,* 699 F.2d 325, 328 (6th Cir.1983) (Sixth Circuit finds substantive due process violation in imposing licensing conditions not statutorily required); *Parks v. Watson,* 716 F.2d 646, 656–57 (9th Cir. 1983) (Ninth Circuit found land use conditions unlawful if "not rationally related to the benefit conferred"); *Southern Cooperative Development Fund v. Driggers,* 696 F.2d 1347, 1356 (11th Cir.) (Eleventh Circuit found substantive due process violation in imposing requirements beyond those enumerated in ordinance), *cert. denied,* 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389

(1983); *Rogin v. Bensalem Township*, 616 F.2d 680, 689–90 (3rd Cir.1980) (Third Circuit found permit denial may constitute denial of substantive due process); *see also id.* at 605–606 (Fifth and Seventh Circuits recognized due process violations in arbitrary and capricious zoning decisions); *Horizon Concepts, Inc. v. City of Balch Springs*, 789 F.2d 1165, 1167 (5th Cir.1986) (local zoning decisions are quasi-legislative in nature and invalid if arbitrary and capricious); *Wheeler v. City of Pleasant Grove*, 664 F.2d 99 (5th Cir.1981) (landowner has "right to be free of arbitrary or irrational zoning standards ..." which must be stricken if "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare") (citing *Arlington Heights v. Metropolitan Housing Development*, 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977); *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926)).

The standard for review of substantive due process is the rational basis test. *Leikind v. Schweiker*, 671 F.2d 823, 825 (4th Cir.1982). In explaining this standard, one court explained that the test does not allow "a zoning decision [to] be justified by mouthing an irrational basis for an otherwise arbitrary decision.... The key inquiry is whether the question is at least debtable." *Shelton v. City of College Station*, 780 F.2d 475, 483 (5th Cir.1986). "The only question here is whether the denial of a zoning [permit]" at least debatably "served the purpose" for which the ordinance was intended to serve. *Id.* (citing *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 105 S.Ct. 1676, 1683, 84 L.Ed.2d 751 (1985) (rational relationship must be "at least debatable" )). The *Shelton* court recognized that the Supreme Court recently had found legislative decisions to fail under the rational basis test, indicating that the test is more than mere rhetoric. *Id.* (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (invalidated city's denial of permit for group home for mentally retarded); *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 105 S.Ct.

1676, 84 L.Ed.2d 751 (1985) (regarding insurance tax which favored resident insurers); *Williams v. Vermont*, 472 U.S. 14, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985) (regarding favoring residents in exemption from use tax on cars purchased out of state)).

In *Shelton*, the zoning board refused to grant a variance from a requirement of minimum parking alotments provisions to builders who had proposed to remodel a building in an area with the "worst parking and traffic problems in the city." *Id.* at 477. Because parking and traffic control was a legitimate purpose for which to deny the variance, the court found the zoning board's decision not to be arbitrary or capricious. *Id.* at 484–85. The *Shelton* court distinguished its case from the *Cleburne* case in which the court "found each explanation internally contradictory or absurd, and concluded that the ordinance must have 'rest[ed] on an irrational prejudice against the mentally retarded....' " *Id.* at 484 (quoting *Cleburne*, 105 S.Ct. at 3260).

The Ninth Circuit found that such irrational prejudice violated substantive due process when a city council denied a special use permit for a group home for "former patients in mental institutions." *J.W. v. City of Tacoma, Wash.*, 720 F.2d 1126, 1127, 1131–32 (9th Cir.1983). Similar to the case at hand, the initial denial was made "despite satisfaction of the ordinance criteria, principally because of the heavy opposition of neighbors at the public hearing" on the application hearing. *Id.* at 1131. The zoning ordinance in *J.W.* directed that "a use permit should be denied if the proposed use would 'generate noise, noxious or offensive emissions or other nuisances which may be injurious to or to the detriment of a significant portion of the community.' " The court recognized that the ordinance itself was legitimate, but that nothing offered as an explanation of the denial was "injurious to or to the detriment of a significant portion of the community." *Id.* at 1131. Consequently, the *J.W.* court found the permit denial to be arbitrary, in violation of due process. *Id.* at 1131–32. The court found it significant that the city

"never attempted to justify the decision to deny the permit in terms of the ordinance criteria." The court concluded that "at some point, the action of local officials must be justified by reference to some 'adequate determining principle' or 'consideration and regard for facts or circumstances.'" *Id.* at 1132 (quoting *Chapman v. Public Utility District No. 1,* 367 F.2d 163, 168 (9th Cir.1966)).

The *J.W.* court indicated that it applied a heightened scrutiny "because the individual permit application decision may rest upon inaccurate and stereotypic fears about the group singled out for special treatment by the legislative classification." *Id.* at 1130–31. The Supreme Court has since indicated, however, that a rational basis test may have been the appropriate measure of the zoning decision's validity. *See City of Cleburne, Tex. v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). In *Cleburne,* the court refused to apply heightened scrutiny to a denial of a permit for a group home for mentally retarded adults. *Id.* 105 S.Ct. at 3255–56. The court clarified that the appropriate standard for review was the "standard of judicial review ... normally accorded economic and social legislation." *Id.* at 3256. Analyzing government action toward the mentally retarded under the rational basis standard "does not leave them entirely unprotected from invidious discrimination." *Id.* at 3258. While the state may "burden the retarded in what is essentially an incidental manner," it may not do so in an arbitrary or irrational manner. *Id.* Furthermore, some objectives, such as "a bare ... desire to harm a politically unpopular group" are not legitimate. *Id.* (citations omitted).

The Court reviewed the district court's findings, including that the "Council was concerned with the negative attitude of the majority of property owners located within 200 feet of the Featherston facility, as well as with the fears of the elderly residents of the community. But mere negative attitudes, or fear, unsubstantiated by factors which are properly cognizable in a zoning proceeding, are not permissible bases" for the discriminatory treatment toward the mentally retarded. *Id.* at 3259. The court emphasized that even the city as a whole could not legitimate such discriminatory activity, even through majority referendum vote. *Id.* (citing *Lucas v. Forty–Fourth General Assembly of Colorado,* 377 U.S. 713, 736, 84 S.Ct. 1459, 1473–74, 12 L.Ed.2d 632 (1964)).

The court admonished that the city could not subvert constitutional guarantees "by deferring to the wishes or objections of some fraction of the body politic. 'Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect.'" *Id.* (quoting *Palmore v. Sidoti,* 466 U.S. 429, 104 S.Ct. 1879, 1882, 80 L.Ed.2d 421 (1984)).

The city offered several specific reasons for denying the permit. The home was near a junior high school whose students might harass the home's occupants, and the home was located on a flood plain. Furthermore, the city council was concerned about who would take legal responsibility of the mentally retarded residents' actions, and about the number of occupants in relation to the home's size. The city also asserted that it was concerned with population density and traffic congestion. *Id.* 105 S.Ct. at 3259–60.

The court determined that these assertions did not justify the special use permit's denial in this case, while other special uses had been freely granted. The court concluded that the permit denial was based upon an "irrational prejudice," and thus, the application of the zoning ordinance was unconstitutional. *Id.* at 3260; *see also id.* at 3261 (rational basis test requests sovereign to rule impartially, making neutral and legitimate decisions) (Stevens, J., concurring).

Although *J.W.* was decided under a heightened scrutiny standard, the *Cleburne* Court's analysis indicates that it would find the permit denial for the mentally ill group home in *J.W.* to be unconstitutional under a rational basis test, since the denial was based on "irrational prejudice", similar to that in *Cleburne.* While the *Cleburne* decision was based primarily

upon the equal protection clause, its analysis of the rational basis test should apply as well to a rational basis test under substantive due process. The *Cleburne* Court has sent a strong message that irrational, arbitrary governmental measures taken against a politically unpopular target on the basis of complaining neighbors' fears or negative attitudes are repugnant to constitutional guarantees. *Id.* at 3258–60.

■ Thus, considering the developing strength of the rational basis test in striking down arbitrary governmental decisions, it appears that the defendants' action in denying the plaintiff's use permit in this case is as arbitrary, irrational and unconstitutional as the actions denounced in *Cleburne* and *J.W.* In both cases, the courts objected to the irrational neighborhood pressure which was so apparent in the case at hand.

Supporting this conclusion is a 1982 Supreme Court case which determined the constitutionality of a Massachusetts statute. This statute authorized churches and schools to deny liquor licenses to those applicants within a 500 foot distance of a church or school which opposed the application. *Larkin v. Grendel's Den, Inc.,* 459 U.S. 116, 103 S.Ct. 505, 507, 74 L.Ed.2d 297 (1982). Although it struck down the statute as a violation of the Constitution's establishment clause instead of the due process clause, the Court in its reasoning indicated that it would find a constitutional violation in the case at hand as well.

The Court recognized that the Massachusetts statute authorized a zoning function, and thus should not be disturbed unless arbitrary or irrational. *Id.* 103 S.Ct. at 509 (citing *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *Village of Belle Terre v. Boraas,* 416 U.S. 1, 7–9, 94 S.Ct. 1536, 1540–1541, 39 L.Ed.2d 797 (1974)). The unconstitutional aspect of this zoning function was that it delegated veto power, which is reserved normally for governmental agencies, to private, nongovernmental, religious entities. *Id.* 103 S.Ct. at 509–510. Although it recognized a valid secular purpose in the statute, the Court

admonished that "the mere appearance of a joint exercise of legislative authority by Church and State provides a significant symbolic benefit to religion in the minds of some by reason of the power conferred." *Id.* at 510. Allowing religious concerns to preempt reasoned, standard-based decisionmaking creates a danger of political diviseness on religious grounds. *Id.* at 512.

In a subsequent case, Justice O'Connor further analyzed the dangers of religious influence on political decisions. *Lynch v. Donnelly,* 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring). She emphasized that the Constitution prohibits religious doctrine from affecting a person's standing in our political community. The prohibition's purpose is to avoid one religious faction's unfair access to government power not available to others, which would create political constituencies of preferred religious groups. A government's endorsement of a certain religious influence "sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community." *Id.* The Court's majority soon adopted this reasoning and added that government actions are unconstitutional if they appear to endorse a certain religious doctrine by fostering a close alliance with the doctrine. *Grand Rapids School Dist. v. Ball,* 473 U.S. 373, 105 S.Ct. 3216, 3226, 87 L.Ed.2d 267 (1985) (citing *Lynch v. Donnelly,* 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring)). Such governmental actions violate not only the establishment clause, but due process as well. *See United Beverage Co. v. Ind. Alcoholic Beverage Comm'n,* 760 F.2d 155, 159 (7th Cir.1985); *see also Philly's, the Original Philadelphia Cheese Steak, Inc. v. Byrne,* 732 F.2d 87, 92 (7th Cir.1984). While government acknowledges and protects the exercise of religion, it "may not promote or give its stamp of approval to [its] spiritual content." *Friedman v. Board of County Comm'rs,* 781 F.2d 777, 781 (10th Cir.1985) (citing *Allen v. Hickel,* 424 F.2d 944, 948 (D.C.Cir.1970)).

The danger of validating city council's decision to deny plaintiff's permit in this case is not merely to endorse unfavorable government action toward an unpopular segment of society. The danger is compounded by the influential power of religious dogma upon the council's discretion in deciding the permit issue. For these reasons, the city council's decision must be REVERSED.

 Having determined the liability in this case, the Court must now determine the damages. In support of his claim for compensatory damages, plaintiff testified that he expected to draw two or three clients per day, receiving five or ten dollars from each client. Record at 186 (Hearing on December 6, 1983). He did not support his estimate of what he thought he could earn by any evidence regarding the likelihood of receiving palmistry clients in the area. There is no indication that a palmist has ever been successful in the area. There is no sound evidence on which to base plaintiff's projected income from the property; thus, his actual loss of income is too speculative on which to base compensatory damages.

The Supreme Court recently clarified that nominal damages are the appropriate remedy for a constitutional deprivation which has not caused provable, actual injury. *Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 2544, 2544 n. 11, 91 L.Ed.2d 249 (1986). The Court emphasized that while substantial damages should go to compensate only actual injuries or to punish or deter malicious violations, nominal damages address the deprivation of constitutional rights with no requirement of proof of actionable injuries. *Id.* 106 S.Ct. at 2544 n. 11. This remedy serves to recognize the importance of constitutional rights to organized society and "that those rights be scrupulously observed." *Id.* Accordingly, this Court AWARDS to plaintiff nominal damages of One Dollar ($1.00).

In light of plaintiff's success in this case, counsel for plaintiff is ORDERED to submit an itemized account of costs and attorney's fees within twenty (20) days from the date of this order.

The Clerk is DIRECTED to send a copy of this order to counsel for all parties.

IT IS SO ORDERED.