Gaylon CLARK, et al., Plaintiffs,

v.

DALLAS INDEPENDENT SCHOOL
DISTRICT, et al., Defendants.

No. 3:85–CV–1203–T.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 30, 1992.

William Charles Bundren, Jackson & Walker, The Rutherford Institute, Mark M. Petzinger, J. Shelby Sharpe, Sharpe Bates & Spurlock, Fort Worth, Tex., for plaintiffs.

Rebecca A. Gregory, U.S. Attorney's Office, Dept. of Justice, Dallas, Tex., Theo Hirt, U.S. Dept. of Justice, Civil Div., Patricia Leitner, U.S. Dept. of Justice, Civil Div., Washington, D.C., for intervenor-plaintiff.

Laura Johnson Urbis, Allen Butler, Kelly G. McClure, Clark West Keller Butler & Ellis, Dallas, Tex., for defendants.

## ORDER (1) VACATING PREVIOUS ORDER,

## (2) GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## AND

## (3) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MALONEY, District Judge.

This matter is before the court on Defendants' motion for summary judgment, and Plaintiffs' motion for partial summary judgment. The parties have each filed their respective responses and replies. The court, having considered the motions, the briefs, and the applicable law, is of the

opinion that Plaintiffs' motion should be granted in part, and Defendants' motion should be denied.

## BACKGROUND

This case involves the tension between First Amendment free speech claims of high school students and a school district's claim that the students' activities are prohibited on school grounds by the Establishment Clause and by the general need to preserve discipline and order. Plaintiffs Gaylon Clark, Philip Mitchell, LeAnn Bentley, Wendy Riggs, Steve May, and Charles Mercado attended Skyline High School during the school year beginning in September 1984, and ending in May 1985. Skyline is a part of the Dallas Independent School District (DISD). Plaintiffs allege that a DISD policy violated their First and Fourteenth Amendment rights to free speech, freedom of assembly, freedom of association, free exercise of religion, and equal protection. Plaintiffs also allege that enforcement of the policy violated 42 U.S.C. § 1983, and the Equal Access Act, 20 U.S.C. § 4071–4074.[1]

The DISD policy in question provides that "student groups shall not be permitted to meet on campus immediately before or after school for religious purposes." Pursuant to this policy, Defendants prohibited Plaintiffs from engaging in religious discussions and meetings and from distributing religious materials on DISD property before and during school. Plaintiffs complain about the enforcement of the policy during the 1984–85 school year. Plaintiffs allege that their "constitutionally protected right of free speech while on the Skyline High School campus and their right to distribution of written religious materials (commonly referred to as 'tracts') was infringed by the [DISD] beginning in September, 1984." At the time in question, Frank Guzick was the principal of Skyline and Linus Wright was the superintendent of the DISD. Jerry Holley, Philip Ray

Jones, and William Dwayne Dawson were assistant principals of Skyline.

In September 1984, Plaintiffs and other students began to meet periodically before school outside Skyline's cafeteria. Plaintiffs engaged in audible prayer and reading of the Bible together. It is undisputed that these meetings were religious in nature. After being informed that a religious meeting was taking place, Guzick, Jones, and Holley broke up the meeting, dispersed the students, and told the participants that the meeting was prohibited by DISD policy. Plaintiff Clark was escorted to the principal's office.

Later in the 1984–85 school year, Plaintiff and other students distributed religious tracts in front of the school building as students exited from the school buses. Defendants prohibited further distribution of the tracts. Plaintiffs contend that there was no disruption or coercion involved in the distribution of the tracts, and that the tracts were only distributed to students who wanted them.

Plaintiffs seek a declaration that the policy in question is unconstitutional and violates the enumerated statutes. Plaintiffs also seek monetary damages and attorneys' fees. Plaintiffs' present motion addresses liability only.

In response to Plaintiffs' motion for summary judgment and in support of their motion for summary judgment, Defendants raise the following defenses: (1) The Equal Access Act is the exclusive means for Plaintiffs to exercise their rights to free speech and freedom of assembly in the religious context on public school property; (2) Plaintiffs do not have free speech rights to preach and proselytize in large groups on school property; and (3) Defendants' failure to prohibit the activity in question would violate the Establishment Clause. Finally, Defendants argue that the case should be dismissed on mootness and standing grounds.

---

**1.** The Equal Access Act prohibits public secondary schools that receive federal financial assistance and that maintain a "limited open forum" from denying "equal access" to students who

wish to meet within the forum on the basis of the content of the speech at such meetings. *Id.* at § 4071(a).

## SUMMARY JUDGMENT STANDARD

Summary judgment should only be entered where the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The movant bears the burden of establishing the propriety of summary judgment. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986).

Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law will identify what facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute as to a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

## DISCUSSION

### I

The court will first address Defendants' mootness and standing arguments.

■ It is undisputed that the policy in question has been changed. Plaintiffs concede that the DISD has "changed its policy with respect to religion and adopted a new policy which guarantees certain additional rights and privileges" regarding religious expression to DISD students. No students are challenging the present policy. Because there is no reason for the court to believe that Defendants will revert to the 1984–85 policy, the court will not consider the facial validity of the 1984–85 policy. Therefore, Plaintiffs' claims for injunctive and declaratory relief are moot.

Plaintiffs' claims for damages are not moot. *Walls v. Mississippi State Dept. of Pub. Welfare*, 730 F.2d 306, 314 (5th Cir. 1984). A claim for damages is not rendered moot by a cessation of the original violation. *Id.* The court must therefore determine what damages, if any, Plaintiffs are entitled to as a result of the application of the 1984–85 policy to their religious activities.

■ Defendants also argue that, because each of the plaintiffs has graduated from Skyline, Plaintiffs lack standing to raise the constitutional challenges. This argument is incorrect. Plaintiffs are entitled to sue for violations of their constitutional rights even though they no longer attend Skyline and even though the policy that gave rise to the alleged violations is no longer in place. *Id.*

### II

■ The First Amendment protects religious speech. *Widmar v. Vincent*, 454 U.S. 263, 269, 102 S.Ct. 269, 274, 70 L.Ed.2d 440 (1981). It is well settled that written expression is pure speech. *Texas v. Johnson*, 491 U.S. 397, 406, 109 S.Ct. 2533, 2540, 105 L.Ed.2d 342 (1989). It is equally true that the guarantee of free speech encompasses the right to distribute written materials peacefully. *United States v. Grace*, 461 U.S. 171, 176, 103 S.Ct. 1702, 1706, 75 L.Ed.2d 736 (1983).

■ While secondary-school students do not shed their right to free speech at the schoolhouse door, *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969), they do not enjoy the same rights as adults in other settings. *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682, 106 S.Ct. 3159, 3164, 92 L.Ed.2d 549 (1986). However, "In the absence of a specific showing of constitutionally valid reasons to regulate their speech, students are entitled to freedom of expression of their views." *Tinker*, 393 U.S. at 511, 89 S.Ct. at 739.

■ Defendants first argue that the restrictions at issue are proper because a public school is not, by tradition, an open forum. However, each of the cases relied upon by Defendants in support of this argument is easily distinguished from the case at hand. The cases relied upon by Defendants involved restriction of activities that were in some way sponsored by the school. *E.g., Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98

L.Ed.2d 592 (1988) (upholding high school principal's deletion of objectionable articles from the school-sponsored student newspaper); *Bethel Sch. Dist. v. Fraser,* 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986) (upholding school district's decision to suspend a high school student for giving a sexually suggestive speech at a high school assembly).

The *Hazelwood* Court noted the important distinction between toleration of a particular student's speech and promotion of a student's speech in a school-sponsored publication:

> The question whether the First Amendment requires a school to tolerate particular student speech—the question that we addressed in *Tinker*—is different from the question of whether the First Amendment requires a school affirmatively to promote particular student speech. The former question addressed educators' ability to silence a student's personal expression that happens to occur on school premises. The latter question concerns educators' authority over school-sponsored publications, theatrical productions, and other expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school.

*Hazelwood,* 484 U.S. at 270–71, 108 S.Ct. at 570.

This case involves suppression of a student's personal expression that happens to occur on school premises. In this case, neither school officials nor school sponsored activities were involved in the restricted conduct. The conduct at issue was voluntary, student-initiated, and free from the imprimatur of school involvement. *Tinker* provides the standard for restricting student free speech on campus that is not part of a school-sponsored program: "[W]here there is no finding and showing that engaging in the forbidden conduct would materially and substantially interfere with the requirements of appropriate discipline in the operation of the school, the

prohibition cannot be sustained." *Tinker,* 393 U.S. at 509, 89 S.Ct. at 738. Defendants have the burden of establishing that the restriction of Plaintiffs' activity and expression was necessary to avoid material and substantial interference with the operation of Skyline. *Id.* at 511, 89 S.Ct. at 739.

### A. *Distribution of religious tracts*

■ Defendants have failed to establish that Plaintiffs' distribution of the religious tracts gave rise to a material and substantial disruption of the operation of Skyline.[2] The only evidence in this regard is that several students objected to the distribution of the tracts. If school officials were permitted to prohibit expression to which other students objected, absent any further justification, the officials would have a license to prohibit virtually every type of expression. The court's decision on this issue is supported by *Rivera v. East Otero Sch. Dist. R–1,* 721 F.Supp. 1189 (D.Colo. 1989) and *Slotterback v. Interboro Sch. Dist.,* 766 F.Supp. 280 (E.D.Pa.1991).

Defendant DISD has deprived Plaintiffs' of their right to free speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution. Therefore, Plaintiffs are entitled to recover damages for that deprivation.

■ The court is of the opinion that Plaintiffs' attempts to distribute religious tracts do not fall within the scope of conduct protected by the Equal Access Act. Plaintiffs were not attempting to hold a "meeting" within the scope of 20 U.S.C. § 4071(a). Therefore, Plaintiffs' claims for violation of the Equal Access Act, insofar as they relate to Defendants' prohibition of the distribution of the tracts, are dismissed.

### B. *Oral proselytizing, religious group prayer and religious discussion*

■ This court agrees with the following statement from the *Rivera* court:

> The District cannot completely muzzle the students to save itself the difficulty of determining which speech it may con-

---

**2.** Defendants raise other affirmative defenses to Plaintiffs' claims. These defenses are rejected in Part III of the court's opinion.

stitutionally proscribe. Most importantly, the mission of public education is preparation for citizenship. High school students, [who at virtually every high school] include persons of voting age, must develop the ability to understand and comment on the society in which they live and to develop their own sets of values and beliefs. A school policy completely preventing students from engaging other students in open discourse on issues they deem important cripples them as contributing citizens. Such restrictions do not advance any legitimate governmental interest. On the contrary, such inhibitions on individual development defeat the very purpose of public education in secondary schools.

*Rivera v. East Otero Sch. Dist. R–1*, 721 F.Supp. 1189, 1194 (D.Colo.1989).

 A blanket prohibition on high school students' expression of religious views and even proselytizing on campus is unconstitutional and contrary to the purpose of secondary schools.[3] However, Defendants have submitted sufficient evidence of disruption to preclude summary judgment in Plaintiffs' favor on this issue. Defendants have submitted testimony as to the following consequences of Plaintiffs' activity: (1) Plaintiffs consistently drew large crowds to hear the religious proselytizing; (2) Plaintiffs used bullhorns to deliver their message; and (3) Plaintiffs' religious activities interfered with other students going to class. There is also evidence that Plaintiffs would continue to speak and proselytize after the school bell rang signaling students that it was time to return to class.

The court is of the opinion that a question of fact exists as to whether Plaintiffs' oral proselytizing and religious meetings constituted a material and substantial disruption of the operation of Skyline High School. This fact question precludes summary judgment for Plaintiffs on (1) their

constitutional claims, insofar as they relate to oral activities, and (2) their Equal Access Act claims relating to the conduct of meetings.

### III

 Defendants argue that allowing the type of activity in which Plaintiffs were engaged would place Defendants in violation of the Establishment clause. The court disagrees. "The Establishment Clause is a limitation on the power of governments: it is not a restriction on the rights of individuals acting in their private lives." *Rivera v. East Otero Sch Dist. R–1*, 721 F.Supp. 1189, 1195 (D.Colo.1989). Defendants' Establishment Clause argument was rejected by the Supreme Court in *Board of Educ. of Westside Community Sch. v. Mergens*, 496 U.S. 226, 247–52, 110 S.Ct. 2356, 2370–73, 110 L.Ed.2d 191 (1990). The Court's opinion sets forth the rationale behind a rejection of Defendants' Establishment Clause argument.[4] Defendants' Establishment Clause defense is dismissed.

 Defendants also argue that the "Equal Access Act provides the exclusive means for students on public school campuses to engage in the free exercise of religion." This argument is frivolous. Defendants' argument implies that the Equal Access Act preempts the First Amendment and the case law interpreting the First Amendment's application to public schools. Defendants have cited no authority for this proposition. The court's research has found none. The court expressly rejects Defendants' Equal Access Act preemption argument.

### CONCLUSION

Defendants have failed to establish sufficient justification for prohibiting Plaintiffs from distributing religious tracts. Defendants' restriction of this activity amounted to a violation of the First and Fourteenth

---

**3.** The fact that speech is in the form of proselytizing *does not alter the nature of that speech* for First Amendment purposes. *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2564–65, 69 L.Ed.2d 298 (1981).

**4.** The issue is also thoroughly discussed by the Colorado district court in *Rivera*, 721 F.Supp. at 1195–96.

Amendments to the United States Constitution and Plaintiffs' constitutional right to freedom of speech. Plaintiffs' motion for summary judgment is denied as to their claims relating to oral proselytizing and religious meetings.

It is therefore ORDERED that Defendants' February 18, 1992, motion for summary judgment is denied, and Plaintiffs' February 18, 1992, motion for partial summary judgment is granted in part.

It is FURTHER ORDERED that the DISD religion policy in effect during the 1984–1985 school year violated Plaintiffs' constitutional right to freely distribute religious tracts.

It is FURTHER ORDERED that the court's October 15, 1987, order granting summary judgment is vacated.