The **PARENTS, ALUMNI,** and **FRIENDS OF TAYLOR SCHOOL,** an **unincorporated Virginia association, Plaintiff,**

v.

The **CITY OF NORFOLK,** a municipal **corporation, and The Norfolk City School Board, Defendants.**

No. Civ.A. 2:98cv284.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 12, 1999.

Andrew M. Sacks, Stanley E. Sacks, Sacks & Sacks, Norfolk, VA, Harrison B. Wilson, III, Richmond, VA, for plaintiff.

Frank A. Edgar, Jr., Conrad M. Shumadine, Wilcox & Savage, Norfolk, VA, for defendants.

## MEMORANDUM AND ORDER

FRIEDMAN, District Judge.

This matter is before the Court on the City of Norfolk's and the Norfolk City School Board's (hereinafter collectively the defendants) motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. A hearing was held on January 29, 1999, at which time the Court took the defendants' motion under advisement. As set forth fully below, after reviewing the briefs submitted and the applicable law, and considering the oral argument of the parties, and finding good cause, the Court finds that summary judgment is appropriate as to plaintiff's Counts I and II. Additionally, because the remainder of the claims are state law claims they are best left, if at all, to the state courts, and therefore, dismissed without prejudice.

### I.

As described in the Court's previous Order concerning the defendants' motion to dismiss (decided August 1998), the federal questions remaining in this case concern whether the defendants' February 1997, decision to demolish the W.H. Taylor Elementary School (Taylor School) violated the plaintiff's, The Parents, Alumni and Friends of Taylor School (Parents), constitutional right to free speech under the First Amendment, and their Fourteenth Amendment rights to protection against racial discrimination. Additionally, at issue in this case are two state law claims alleging violations of a 1923 Norfolk Ordinance and the Norfolk General Plan.

The Taylor School was built in 1917, and is located in the West Ghent section of Norfolk. Pl's Cmplt. ¶ 28. On December 12, 1996, the School Administration announced its plan to demolish the old Taylor School, and to construct a new elementary school on the adjacent land. Pl's Cmplt. at ¶ 50. On February 27, 1997, after public meetings and debates, the School Board approved the School Administration's proposal to demolish and replace the Taylor School. Pl's Cmplt. at ¶¶ 47–85, and specifically 59; Defs' Ex. 9D (minutes from Feb. 27, 1997, School Board Meeting). Parents is an unincorporated Virginia association opposed to the School Board and City's decision to demolish the School and rebuild on adjacent ground. The members of Parents steadfastly advocated for the option of renovating the existing structure.

On December 22, 1997, Parents filed suit in Norfolk Circuit Court, and immediately sought emergency relief to prevent the removal of trees on the land proposed for the new school. The emergency motion was denied, the trees were removed, and the matter proceeded in state court with briefing on dispositive motions. On March 9, the plaintiff nonsuited its case in Norfolk Circuit Court, and on March 11, it filed the instant complaint. On April 6, the defendants filed a motion to dismiss, which the Court granted in part and denied in part. Specifically, the Court dismissed the plaintiff's claims under the National Historic Preservation Act and the Virginia Procurement Act.

The defendants seek summary judgment on all remaining claims and filed their motion along with statement of undisputed facts on January 4, 1999. The plaintiff filed an opposition and a supplemental pleading with attached affidavits. During the pendency of the litigation process, the construction of the new Taylor School pro-

ceeded, and the Court has been advised that the new structure is near completion. Nonetheless, this case is set for a jury trial to commence April 6, 1999.

## II.

The standard for granting summary judgment is met if after a review of all of the pleadings, depositions, affidavits and other documents submitted by the parties, the court finds that there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Roe v. Doe*, 28 F.3d 404, 406 (4th Cir.1994). In this case, the defendants have moved for summary judgment as to each of plaintiff's claims and contend that there are no genuine disputes as to material facts, and that the law favors disposition of this case in its favor as a matter of law.

To find against the movants (the defendants), the Court must find both that the facts in dispute are material, and that the disputed issues are genuine. As for materiality, the factual dispute must be dispositive of the claim. *See Thompson Everett, Inc. v. National Cable Advertising, L.P.*, 57 F.3d 1317, 1323 (4th Cir.1995). Similarly, the genuineness of the factual dispute must be more than a dispute based on speculation or inference. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (finding *inter alia* that a complete failure of proof on an essential element of the claim may render the facts immaterial); *Runnebaum v. NationsBank of Md., N.A.*, 123 F.3d 156, 164 (4th Cir.1997).

## III.

In the Court's August 1998 Order on defendants' motion to dismiss, the Court considered defendants' argument that the plaintiff lacked standing to bring this suit. The Court denied the defendants' motion as to standing finding that the plaintiff had met the minimal burdens to withstand the motion to dismiss. However, the Court cautioned the plaintiff regarding the requirements for standing at the summary judgment stage. Because this Court only has jurisdiction to review "cases and controversies," before considering the merits of the claims, the Court must determine whether the plaintiff has standing to bring this suit. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 1015, 140 L.Ed.2d 210 (1998) (citations omitted); *Burke v. City of Charleston*, 139 F.3d 401 (4th Cir.1998).

■ As set forth fully in the Court's Opinion on the defendants' motion to dismiss, an association or organization, such as the Parents, can sue as a representative of its members provided that certain conditions are met. *See generally, Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *National Motor Freight Ass'n v. United States*, 372 U.S. 246, 247, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963). In *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the Court held that for an organization to establish standing it must show (1) that its individual members would have standing to sue in their own right; (2) that the interests the association seeks to protect are germane to the organization's purpose; and (3) that neither the claim asserted nor the relief requested require the participation of the individual members of the organization in the lawsuit. *See Hunt*, 432 U.S. at 343, 97 S.Ct. 2434 (citing *Warth*, 422 U.S. at 511, 95 S.Ct. 2197); *Tower South Prop. Owners Ass'n v. Summey Building Systems, Inc.*, 47 F.3d 1165 (4th Cir.1995) (unpublished); *Waterford Citizens' Ass'n v. Reilly*, 970 F.2d 1287, 1288 n. 1, 1290 (4th Cir.1992) (holding that citizens' association, a non-profit unincorporated group of village residents whose purpose was to preserve the community's historic character, had standing) (citations omitted).

■ To determine whether the individual members of Parents would have standing in their own right, the Court must look to the Supreme Court's decision in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). *Defenders* involved whether an environmental plaintiff's group had standing to sue over the legality of the Department of the Interior's regulation regarding the Secretary's authority on the high seas. A central issue to the case was whether the plaintiff's organization had suffered an injury-in-fact sufficient to create an Article III "case and controversy." Resolving the case in favor of the Department of the Interior, the Supreme Court set forth a succinct three part test that a party attempting to invoke federal jurisdiction must establish for constitutional standing. *Id.* at 560, 112 S.Ct. 2130.

First, the party must establish that it has suffered an injury to a "legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical." *Defenders,* 504 U.S. at 560, 112 S.Ct. 2130 (citations omitted). Second, there must be a causal connection between the injury suffered and the conduct complained of. *Id.* at 560, 112 S.Ct. 2130 (citations omitted). Third, it must be likely, rather than speculative, that the injury alleged by the plaintiff will be redressed if the Court enters a decision in favor of the plaintiff. *Id.* at 560, 112 S.Ct. 2130 (citations omitted); *see also Burke,* 139 F.3d at 404 (using the three prong test from *Lujan* ).

■ The party invoking the Court's jurisdiction bears the burden to prove the elements of standing. *Defenders,* 504 U.S. at 561, 112 S.Ct. 2130. Since this case is pending on defendants' motion for summary judgment, before the Court are all of the pleadings, depositions, answers, affidavits, etc., submitted by both the defendants and the plaintiff. *Id.* At summary judgment, the plaintiff can no longer rely on mere allegations. *Id.* As such, this Court has closely examined and relied on, among other things, the excerpts of Deposition of Alisa Landrum (attached as Defs' Ex. 12) and the plaintiff's supplemental exhibits (S–Ex.) in making its decision.

### A. *Injury In Fact*

■ The defendants' primary argument on standing is that Parents, the plaintiff organization, can prove no particularized injury to itself or its constituent members. The defendants rely on *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), where the Court found that an organizational plaintiff must demonstrate a particularized, rather than a generalized, injury in fact to establish standing to sue in a case. *See also Burke,* 139 F.3d at 407. Under *Valley Forge,* this Court must determine whether the plaintiff organization or its members individually have suffered "immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Valley Forge,* 454 U.S. at 511, 102 S.Ct. 752.

■ During the discovery process in this case, the defendants took a 30(b)(6) deposition of Alisa Landrum, the individual produced by plaintiff as the best able to testify as to "any damage or harm suffered by the [plaintiff organization.]" *See* Landrum Depo. In response to counsel's questions regarding what special interest the plaintiff had that differed from the general public, Ms. Landrum candidly responded that the organization had many legal bills for obtaining legal representation, and that some members had incurred expense lobbying the school board to repair the existing building.[1] *See, e.g., Id.* at 138–39.

---

1. Landrum additionally contends on behalf of her association that some of the property owners' property had depreciated in value.

*See* Landrum Depo. at pp. 129–132. However aside from Landrum's contention, there is

This justification for standing is reiterated elsewhere by the plaintiff in its pleadings. However, the plaintiff's contention that the expense of bringing this lawsuit constitutes an injury-in-fact for standing purposes, is an example of the "tail wagging the dog," that this Court will not accept. Indeed, this Court knows of no legal proposition, and plaintiff offers none, which would allow a plaintiff to file litigation first, and then based solely on its pending suit and associated expenses, argue that it has established an injury-in-fact for standing purposes. *See Steel Co.*, 118 S.Ct. at 1018 (finding that plaintiff cannot establish standing "by bringing suit for the cost of bringing suit").

More importantly however, the members of Parents constitute people who, are among other things, the parents or alumni of the Taylor School (hence the name), and many of whom live in the West Ghent area where the Taylor School is located. *See* Landrum Depo. at 138–39; Affidavits of Allen–Grimes, Grimes, Hanbury, Landrum and Sabol (attached as Pl's S–Exs. 4–6 & 8). In its complaint, the plaintiff asserts that it is an unincorporated Virginia association organized "to assure a fact-based, inclusive process, with due regard to the majority in determining whether to preserve and renovate the existing Taylor School." Cmplt. at ¶¶ 13–14. However, more than being a group of people who seek a fair process, many of the members of Parents have consistently participated in Taylor School activities, including the PTA and other organizations, and who have advocated for and might have been integral to the process of securing the Taylor School's designation on the National Register. *See, e.g.,* Pl's S–Exs. 3–8. These types of interests differentiate the plaintiff's members from the general community.

■ The plaintiff additionally argues that the Court can rely on non-economic interests to establish standing for an organization. This legal conclusion is well es-

tablished, and apparently not disputed by defendants. *See Defenders,* 504 U.S. at 562, 112 S.Ct. 2130 (citing *Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)). The plaintiff argues that since the commencement of this lawsuit the old Taylor School was placed on the National Register of Historic Places, and therefore, that its members have standing. *See* Affidavit of Lisa Berchum, Senior Program Associate for the National Trust of Historic Places (stating that the Taylor School was placed on the National Register in 1998) (Pl's S–Ex. 3). However, the mere placement of the Taylor School on the National Register does not in and of itself create a particularized interest necessary for standing. Instead, this Court must determine whether the plaintiff has a particularized interest in the historic preservation of the Taylor School. *See Defenders,* 504 U.S. at 564, & 573–74, 112 S.Ct. 2130 (differentiating between generalized interest in endangered species and interest in particular species that would be affected by challenged action). After a careful review of the affidavits, the Court finds that many of the members of Parents have a particularized and concrete interest in the historic nature of the Taylor School. *See* Allen–Grimes Aff. (Pl's S–Ex. 4) (stating that she had attended meetings to advocate for the school's placement on the Register); Landrum Aff. (Pl's S–Ex. 7) (explaining that she also had attended meetings to support school's addition to Register).

Finally, plaintiff contends that because its members allegedly suffered at the hands of the School Board by experiencing suppression of their speech, the plaintiff was injured-in-fact. The majority of the affidavits submitted by the plaintiff members resonate in descriptions of instances that they allege constitute direct violations of their First Amendment rights to freedom of speech. *See* Affidavits of Benton, Berkley, Allen–Grimes, Grimes, Hanbury,

no factual support for this allegation in the record before the Court.

Landrum, Miller and Sabol (attached as Pl's–Exs. 1, 2, and 4–9).

The plaintiff cites *Clark v. Dallas Ind. School D.,* 806 F.Supp. 116, 118 (N.D.Tex. 1992), for the proposition that an allegation of constitutional infringement of free speech can by itself create a non-economic interest and predicate a claim of standing. The Court does not share plaintiff's interpretation of the *Clark* case. In *Clark,* the district court merely ruled that the fact that the many of the plaintiff's organizational members had since graduated from the high school where the alleged violations occurred did not make the claims moot, and that the plaintiff could still have standing to sue.

However, the notion that a person who claims and can show that he or she has sustained some direct injury, or is in immediate danger of sustaining some injury as a result of a legislative action, has a concrete case and controversy justiciable in Court. *See Defenders,* 504 U.S. at 574, 112 S.Ct. 2130 (quoting *Ex parte Levitt,* 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493 (1937) (dismissing suit for lack of standing where plaintiff claimed that Justice Blackmun's appointment to the Supreme Court violated Ineligibility Clause) (other citations omitted)). Many of Parents' members have set forth concrete and detailed examples of what they allege are direct injuries resulting from the defendants' attempt to suppress their speech. *See, e.g.,* Affidavits of Allen–Grimes, Grimes, Hanbury, Landrum, and Sabol (S–Exs. 4–6 & 8). The issue is not whether the plaintiff will ultimately prevail on its claims. *See generally, Steel Co.,* 118 S.Ct. at 1010 (finding that whether jurisdiction is not defeated by possibility that plaintiff will not prevail). Instead, whether meritorious or not, the plaintiff has set forth specific instances of what it contends were direct violations of its members' right to free speech under the Constitution.

Therefore, after considering the entire record submitted in this case including the supplemental affidavits provided by plain-

tiff, the Court concludes that the plaintiff has the type of injury-in-fact and particularized grievance described repeatedly by the Supreme Court.

### B. *Causation*

The defendant additionally argues that the plaintiff has failed to show how the injury alleged is causally connected to the defendants' actions, *i.e.,* the decision to tear down the existing school and build a new school on the premises, and its actions regarding the alleged suppression of speech. The plaintiff claims that the decision to demolish the Taylor School has, continues to, and will in the future harm its interests and have an adverse effect on it. Cmplt. at ¶¶ 17 and 19. Plaintiff additionally claims that the defendants' "improvident and premature site clearance and demolition in connection with the proposed Taylor School new construction project" has caused actual injury to the plaintiff's constituent members "and Norfolk citizens, generally." *Id.* ¶¶ 16–19. As set forth above, the Court finds that plaintiff's have a particularized interest in the preservation of the historic Taylor School, and that they proved an injury-in-fact to survive the motion for summary judgment. It is equally clear from the affidavits that the alleged injury to the plaintiff is fairly traceable to the defendants' challenged conduct.

### C. *Redressibility*

Finally, the defendants argue that a favorable decision would not redress the plaintiff's Fourteenth Amendment or First Amendment claims. Ms. Landrum stated in her deposition that the plaintiff seeks either that the new school to be torn down and the old school be renovated, or that the City be required to operate the two schools simultaneously (enjoin the demolition of the old school). *See* Landrum Depo. However, at oral argument counsel for the plaintiff conceded that it would not pursue a remedy in the form of a order requiring the new school to be torn down.

Therefore, the potential remedies in this case include a declaratory order, an injunction preventing the City from tearing down the old school, or further appropriate relief, which might include a remand to the City or School Board for further consideration consistent with this Court's ruling.

The plaintiff argued at the hearing in this matter that this case was analogous to *Marks v. City Council of the City of Chesapeake* where the court found that the injunctive relief requested had become moot, but nonetheless granted a declaratory judgment against the City of Chesapeake for constitutional violations, and ordered an award of nominal damages of $1.00 to the plaintiff. 723 F.Supp. 1155 (E.D.Va.1988) (Doumar, J.), *aff'd* 883 F.2d 308 (4th Cir.1989). However unlike in *Marks*, in this case the injunctive relief, *i.e.*, an injunction from tearing down the old school now listed on the Historic Register, is not moot. While plaintiff concedes that it will not seek demolition of the newly constructed school, it continues to argue that an injunction to prevent the demolition of the old Taylor School would provide an appropriate remedy in this case.[2]

Additionally, unlike the plaintiff in *Marks*, the plaintiff in this case did not specifically request a damage award, even nominal damages. *See Marks*, 723 F.Supp. at 1159 (citing *Lane v. Reid*, 559 F.Supp. 1047, 1048–53 (S.D.N.Y.1983) (allowing plaintiff prisoner case where injunctive relief was moot, to amend complaint to seek damages so that request for declaratory relief might be salvages)). Instead, in the plaintiff's complaint, it seeks a declaratory judgment, attorney fees and costs, and in accordance with 28 U.S.C. § 2202, further relief the Court deems appropriate.

As to the plaintiff's request for relief in the form of a declaratory judgment request, it is certainly questionable whether a declaratory judgment in and of itself would redress the plaintiff's alleged injuries. *See Steel Co.*, 118 S.Ct. at 1018 (finding that a declaratory order under the facts of that specific case would be worthless to the plaintiff and "seemingly worthless to all the world"). However, like in *Marks*, it is at plausible that a declaratory order would redress some of the plaintiff's claims. As to the request for attorney's fees and costs, the plaintiff cannot survive a standing inquiry based solely on its request for attorney fees to bring the litigation. *Id.* at 1018 (citations omitted).

■ For these reasons, the Court cannot find that it lacks any remedy which would serve to redress the plaintiff's claims in this case. The standard is whether there is substantial likelihood that the requested relief will redress the plaintiff's alleged injuries, not whether the injuries will definitely be redressed. *See Steel Co.*, 118 S.Ct. at 1016–17 (*citing Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 45–46, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), and *Warth,* 422 U.S. at 505, 95 S.Ct. 2197). While possibly not what the plaintiff might have originally anticipated, there is a substantial likelihood that a remedy either in the form of an injunction, a declaratory judgment, or a remand, or some combination of the three, could be fashioned to redress the alleged constitutional violations at issue in this case, and avoid any conflicts in separation of powers.

In sum, the Court recognizes that the facts in this case present a close question on standing, and that the plaintiff did not present a clean or neat package to affirma-

---

2. The defendants however, argue that an injunction enjoining the demolition of the old Taylor School (1) would increase the overall costs (thereby adding fuel to the fire of the Fourteenth Amendment claim), and (2) might violate the General Plan since it does not call for two buildings on the land allocated. First, the Court is unwilling to accept defendants' speculation as to the cost of the renovation of the old Taylor School and its potential uses in the community. Second, the defendants' argument that the General Plan would be violated is illogical considering that in its second breath the defendants argue that the Plan is discretionary, rather than mandatory.

tively establish their standing to sue in this case. Nonetheless, reviewing the record as a whole and considering the facts at issue in this case, the Court FINDS that the plaintiff has presented a live "case and controversy" reviewable under Article III of the Constitution, and that it has constitutional standing at least with regard to its First and Fourteenth Amendment Claims.[3]

## IV.

In addition to its standing arguments, the defendants argue that the plaintiff's claims fail as a matter of law, and that summary judgment should be granted. Each of the pending claims is addressed below.

### A. Count I—Fourteenth Amendment Violations

■ Count I of the plaintiff's complaint alleges that the defendants' decision to demolish and rebuild the Taylor School violates some right, privilege or immunity guaranteed by the Fourteenth Amendment. Specifically, the plaintiff claims that alleged difference in the funds spent on Taylor School versus the funds spent on schools in predominately black neighborhoods evidences racial discrimination on the part of the defendants. The plaintiff, however, did not plead in its complaint that the defendants had a specific "discriminatory intent," and during Ms. Landrum's deposition she clearly stated that the plaintiff did not contend that the "individuals" on the School Board acted with discriminatory intent. *See* Landrum Depo. at 6, 12, and 16. Instead, the plaintiff urges the Court to "draw an inference" from the facts that the "official entity," *i.e.,* the School Board or the City, rather than the

individuals that comprise the same, acted with a discriminatory intent. The plaintiff argues that the question of intent is a jury question and not appropriate for summary judgment.

Since at least the 1970s, the Supreme Court has repeatedly held that to prove a case under the Fourteenth Amendment, the plaintiff must show a discriminatory purpose, which requires proof that the legislator made a certain decision, at least in part, because of, and not merely in spite of, the disparate impacts the decision would have on an identifiable group. *Personnel Admin'r of Mass. v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (ruling on policy that allegedly discriminated against women); *see also Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). In *Feeney,* the Court held that the lower courts must consider the totality of the legislative circumstances and actions and determine if the law is what the plaintiff alleges it is: an intentionally discriminatory state action. *Feeney,* 442 U.S. at 279, 99 S.Ct. 2282.

The Fourth Circuit has adhered to the guidance of the Supreme Court. For example, in *Sylvia Dev. Corp. v. Calvert Cnty., Md.,* 48 F.3d 810, 819 (4th Cir.1995), the Fourth Circuit found that when a state action is alleged to discriminate against a particular group, the court must consider first whether the action is "facially neutral." In this case the decision to demolish the existing Taylor School and rebuild a new Taylor School on the existing property is facially neutral as to race. Therefore, the plaintiff bears the burden of showing that a racial classification was nonetheless utilized. *Id.* at 819. Only after the plain-

---

**3.** Much of the Court's ruling on standing is predicated on the plaintiff's specific allegations that the defendants' conduct directly infringed on plaintiff's constitutional rights. However, this analysis is largely inapplicable to whether the plaintiff has standing to claim that the defendants violated its own Ordinance or General Plan. The potential for redressing the plaintiff's injuries alleged as a result of the state law claims is a matter best addressed separately from the analysis of standing as to the First and Fourteenth Amendment claims. Therefore, without ruling as to the effect of this Opinion on the remainder of the claims in this case, the Court notes that this Order is not intended as a definitive statement as to the plaintiff's standing to bring the state law claims.

tiff shows that the legislators or decision-makers had some discriminatory intent does the Court look to whether there was a legitimate state purpose for the alleged discriminatory action—the plaintiff must always first prove intent. *Id.; see also Villanueva v. Carere*, 85 F.3d 481, 485–87 (10th Cir.1996) (dismissing parents of students' case challenging closure of school upon finding that parents had failed to show discriminatory intent); *Sims v. Mulcahy*, 902 F.2d 524, 539 (7th Cir.), *cert. denied*, 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990).

In *Sylvia*, the Fourth Circuit found that several factors may evidence a discriminatory intent and should be considered by the Court. These factors include: (1) a consistent pattern of similar actions, (2) the historical background of the decision, (3) the sequence of events leading to the decision, and (4) contemporary statements made by the decision-makers. *Id.* (citing *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 266–68, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)). In this case, the plaintiff failed to identify any pattern or background information which convinces the Court that the defendants acted with discriminatory intent. Instead, the plaintiff asks the Court to blindly draw an inference from the disparate spending and assume that the defendants' intent was racially discriminatory.[4] This, the Court will not do. Rather than simply accepting the plaintiff's suggested inferences, the Court relies on the affidavits of the School Board members, in which each member of the School Board stated under oath that their decision re-

garding Taylor School was made based on their belief that the decision was the best for the community and the students, and that they had no discriminatory intent. *See* Affidavits Attached to Defs' Memo.

Aside from the inference that plaintiff requests the Court make, plaintiff submitted several member's affidavits stating that they were told by other local citizens, *i.e.*, Ms. Callahan or Ms. Armstrong, that the decision to build a new school was in part motivated by the desire to attract "good" students back from private schools. *See* Affidavits of Allen–Grimes and Hanbury (S–Ex. 4 and 6) (both recalling conversations with various members of community, not public officials, who provided their opinions as to what motivated the School Board or what members of the School Board allegedly told them). First, since the plaintiff's evidence on this issue constitutes hearsay, it is inadmissable. Therefore, the Court cannot rely on it as a basis for denying summary judgment. *See Maryland Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir.), *cert. denied*, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 325 (1991) (finding that hearsay evidence, which is inadmissable at trial, cannot be considered on a motion for summary judgment); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990); *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 570, n. 4 (7th Cir.1989).

Second, even if this evidence were admissible under some exception to the hearsay rule, the plaintiff's claim could not survive on summary judgment. The plaintiff apparently assumes that the al-

---

4. The plaintiff relies on *Elston v. Talladega County Bd. of Educ.*, 997 F.2d 1394 (11th Cir.1993), for the proposition that, in a case such as this, direct evidence of racial discrimination is unnecessary if the plaintiff has evidence of other factors that create a presumption of racial discrimination. First, the Court does not find anything unique about the factors that *Elston* court considered probative on the issue of discriminatory intent. Instead the same sort of factors are considered in this Circuit. *See Sylvia*, 48 F.3d at 818–819. Second, while the facts in *Elston* are similar to

the facts in this case, the plaintiff in *Elston* presented a more persuasive case as to discrimination and specifically what it considered to be indirect evidence of a discriminatory intent on the part of the School Board than the plaintiff has in this case. *Elston*, 997 F.2d at 1408–09. Nonetheless, the Eleventh Circuit affirmed the District Court and found that the plaintiff had not met its burden of showing discriminatory intent. *Id.* at 1408–11. Similarly in this case, the plaintiff has not met its burden on the Fourteenth Amendment claim.

leged desire to retrieve the "good students" from private schools, is really a discriminatory intent to provide better schools for the affluent white neighborhood students. However, the existence of a mere "scintilla of evidence," such as this, is insufficient to support plaintiff's position and survive summary judgment. *Maryland Highways,* 933 F.2d at 1251 (quoting *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505 (citations and quotations omitted)). *See United States v. Yonkers Bd. of Educ.,* 837 F.2d 1181, 1223–26 (2d Cir. 1987), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988) (finding that discriminatory intent can be inferred from an action undertaken in response to the majority of the community and their discriminatory intent).

In this case, the plaintiff admittedly lacks any direct evidence of the spending practices or motivations of the School Board.[5] The plaintiff requests that the Court consider what it calls "very irregular decision-making" as circumstantial evidence of racial discrimination. The plaintiff claims, through its members' affidavits, that the spending for the new Taylor School is greater than any other elementary school expenditure in the state of Virginia. *See* Affidavit of Grimes (S–Ex.5). However, even in Mr. Grimes' affidavit, he merely describes the information collected from a state administrator. Additionally, the fact that the new Taylor School cost more than other schools throughout the state is not evidence, in and of itself, of discriminatory intent. As the Court noted at the hearing in this case, it is unclear from the facts before the Court why the costs of Taylor School are high, and the Court is unwilling to speculate on this issue.[6]

After a review of the evidence presented, the Court FINDS that there are no material facts in dispute regarding genuine issues on the Fourteenth Amendment claim. Specifically, the plaintiff failed to prove a necessary element of the Fourteenth Amendment claim of racial discrimination since there is no evidence, direct or inferential, that the defendants acted with any discriminatory intent or motivation when making the challenged Taylor School decision. Therefore, summary judgment is appropriate as to plaintiff's Count I under the Fourteenth Amendment.

B. *Count II—First Amendment Violations*

The plaintiff's Count II rolls a myriad of claims into one under the First Amendment, and presents more complex issues than those analyzed above under the Fourteenth Amendment. However, ultimately the inquiry before the Court amounts to whether the plaintiff's members were provided an adequate opportunity pursuant to the First Amendment to express their views to the School Board and the City.

First, the plaintiff claims that representatives of the Virginia Department of Agriculture and the Commissioner of Revenue of Norfolk took certain actions which

5. The plaintiff contends that it was unable to collect the appropriate documentation to support its claim under the Fourteenth Amendment due to the defendants' refusal to provide requested information during discovery. However, the Court notes that no motions to compel or the like were filed in this case. Whatever the excuse the plaintiff may give for its inability to prove its claims under the Fourteenth Amendment, it remains plaintiff's burden at this stage in the litigation.

6. Of additional concern to this Court is whether, as plaintiff contends, a white plaintiff can state a claim for which relief can be granted, based on the fact that she or he is offended by the alleged disparate treatment of minorities. *See Campbell v. Louisiana,* 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998) (holding that white defendant has third party standing to raise a claim of discriminatory exclusion of blacks from the Grand Jury); *but see Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (finding that non-economic injury only provides basis for standing to those that are personally denied equal treatment). However, because the plaintiff has failed to establish a necessary element of the Fourteenth Amendment claim, it need not address this issue in this case.

allegedly violated the plaintiff's first amendment freedoms. *See* Pl's Cmplt. ¶¶ 96–114. The defendants argue without admitting that the challenged conduct amounted to first amendment violations that they cannot be held liable for the alleged constitutional infractions. This Court agrees. The City and School Board can only be liable for actions that are officially sanctioned or ordered by the Municipality. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *see also Flickinger v. School Board of City of Norfolk, Va.,* 799 F.Supp. 586, 590 (E.D.Va.1992) (finding that the defendant must have "personally participated or acquiesced in the alleged violation because the doctrine of respondeat superior is inapplicable to section 1983 suits") (Smith, J.).

■ The plaintiff has failed to produce any evidence that the defendants sanctioned or ordered the conduct of the Agriculture Department or the Commissioner of Revenue. Conversely, the defendants submitted an affidavit from Anita Poston, the Chairman of the Norfolk City School Board, stating that the City did not sanction, participate or acquiesce in the other parties conduct. As a result, the Court FINDS that there are no material facts in dispute as to this portion of the plaintiff's First Amendment claim, and summary judgment is appropriate as a matter of law.

Second, the plaintiff asserts that the defendants violated their First Amendment rights by failing to provide the Parents' members with adequate time or opportunity to address the Taylor School issue at the School Board meetings. Complaint at ¶¶ 115–124. For example, the defendant School Board allegedly instituted a "gag rule" with regard to the public comments concerning the Taylor School decision. *See* Pl's Cmplt. at 115–117; Affidavits of Allen–Grimes, Grimes, Landrum (Pl's S– Ex. 4, 5, and 7).

■ The First Amendment does not create a right to communicate a person's views "at all times or in any manner that may be desired." *Heffron v. Int'l Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 647, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). Instead, the government may institute "time, place and manner restrictions" in a public forum without violating the First Amendment so long as the restrictions are narrowly drawn to achieve a significant governmental interest, and leave open alternative channels of communication. *Airport Comm'r of Los Angeles v. Jews for Jesus,* 482 U.S. 569, 573, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) (quotations omitted). However, if, as the plaintiff claims in this case, the speech restrictions are content-based, then the government must demonstrate that the restrictions were justified by a "compelling" governmental interest. *Id.; Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989).

In this case, the challenged restrictions, the limitations on plaintiff's desire to comment at School Board and City Council meetings, constitute a restriction of speech in a public forum, since the government elected to make its meetings open to the public. *See City of Madison Joint School D. No. 8 v. Wisconsin Employment Relations Comm'n,* 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976) (finding that open school board meeting was public forum). Furthermore, from the record before the Court, it appears that the plaintiff members attending the public meetings complied with the time, place and manner restrictions of speech during the meetings, and that they were foreclosed from speaking as a result of the specific content of their speech, *i.e.,* comment on the Taylor School decision.

Courts have consistently held that public bodies may specify subject matter for discussion. *City of Madison,* 429 U.S. at 176, n. 8, 97 S.Ct. 421; *Jones v. Heyman,* 888 F.2d 1328, 1331 (11th Cir.1989) (finding that a governmental body has a significant

interest in maintaining orderly conduct at its meetings) (quoting Justice Stewart's concurrence in *City of Madison*, 429 U.S. at 180, 97 S.Ct. 421 (stating that a governmental body should not be restricted "in trying to best serve its informational needs while rationing its time")). In this case, the plaintiff's speech was not restricted until months after the School Board had voted and made a final decision on the Taylor School debate. From plaintiff's own evidence, it is clear that the so-called gag rule was not instituted until sometime in either August or September 1997, months after the School Board made its February decision to adopt the recommendation of the School Administration to demolish and build a new school. Both plaintiff's and defendants' affidavits make clear that the plaintiff members had an opportunity to be heard prior to the final February vote, as well as after the vote was taken. For example, on January 14, 1997, there was a public hearing where thirty citizens spoke. Similarly, on January 23, 1997, School Board met and nineteen citizens spoke. On February 27, 1997, the School Board held a meeting where many citizens spoke and petitions were provided.[7] *See also* Landrum Depo. (explaining the consistent efforts of the plaintiff members in attending and speaking out at various meetings to lobby the City Council, Mayor or School Board members). Additionally, each of the voting school board members submitted affidavits that he or she listened to the comments made by the citizens and considered the handwritten comments submitted by the plaintiff's members prior to voting on whether to renovate or construct a new building for the Taylor School.[8]

■ After reviewing all of the evidence presented, the Court FINDS that based on the circumstances of this case, *i.e.*, where the issue previously had been debated and voted on, the defendants' interest in controlling its agenda at public meetings, and conducting orderly and effective meetings constitutes an allowable and compelling justification for the challenged time, place and manner restriction on plaintiff's speech. Furthermore, the challenged restrictions were narrowly tailored to achieve the defendants' interests, and did not foreclose alternative means of communication. *See* Statement of Poston, School Board Chair encouraging that additional information be submitted in writing to the School Board (attached to Landrum Affidavit (Pl's S–Ex. 7)) and other examples of plaintiff's communication with School Board and City officials on later occasions.

The plaintiff in this case was provided with more than ample opportunity to convince the defendants of their position. Nonetheless, the School Board voted and the City agreed to exercise the option of demolishing the old Taylor School and building a new school on the adjacent property, rather than renovating the existing school. The plaintiff's complaint boils

7. Additionally, while not necessarily impacting the School Board, according to the plaintiff's own affidavits, its members regularly attended and participated in Civil League meetings, meetings of Taylor School PTA, and meetings of Taylor School Task Force.

8. In plaintiff's oral argument at the hearing in this matter, and in the affidavits attached to plaintiff's brief by its members, it identified many instances not specifically described in the complaint that it apparently contends constitutes evidence of violations of the First Amendment. For example, various members complain that they were not allowed to freely distribute a plaintiff petition on public grounds by City Police Officers, that they were temporarily prohibited from hanging a banner on their home by the local Zoning Officer, or that they felt that speech was impinged or votes were irregularly taken at public meetings conducted by the Taylor School Task Force or the Taylor School PTA. *See* Affidavits of Benton, Berkley, Allen–Grimes, Landrum, Grimes, Hanbury, Miller, and Sabol (Pl's S–Ex. 1, 2, 4–9). However, these allegations are not contained in the plaintiff's complaint and are not properly before the Court. As such, they are largely irrelevant to whether as plaintiff claims the School Board or City Council improperly restricted speech at its publicly held meetings.

down to a disputed political issue on which the plaintiff was undisputably heard, but nonetheless the defendants did not vote in favor of the plaintiff's position. This Court will not disturb the political process in a case where the plaintiff was given ample opportunity to be heard, but disagreed with. This Court FINDS that there are no material facts in dispute as to any genuine issues on the plaintiff's First Amendment claim, and the defendants' motion for summary judgment is appropriate on Count II as a matter of law.

### C. Plaintiff's State Law Claims

■ The two state law claims remaining before this Court allege violations of Norfolk's General Plan (Count VII), and a 1923 Ordinance (Count VI). The question that most troubles the Court is whether the General Plan of Norfolk is discretionary or mandatory. In the first substantive opinion in this case, the Court did not directly address this issue. Instead, the Court found that further factual development would be necessary, and that the Plan "was not necessarily discretionary." However, the Court specifically withheld a definitive ruling on the Plan claim. *See* Aug. Opinion at 17. The defendant argues that two Virginia Supreme Court cases control this case and provide that city general plans are discretionary in nature and not enforceable in court. *See City Council of the City of Salem v. Wendy's of Western Virginia, Inc.*, 252 Va. 12, 16, 471 S.E.2d 469, 472 (1996) (stating that "the City elected to adhere to the standards of its comprehensive plan, a matter within the council's discretion"); *Bd. of Supervisors of Loudoun Cnty. v. Lerner*, 221 Va. 30, 37, 267 S.E.2d 100, 104 (1980) (stating that "it was a matter within the Board's discretion to decide whether to adhere to [the standards of the Comprehensive Plan] or to follow some other reasonable approach

in determining whether to grant or deny the rezoning application"). The plaintiff understandably attempts to distinguish the facts from the two Virginia Supreme Court cases, and argues that the specific language relied on by the defendants is merely a semantical argument.

Additionally complicating this state law issue is the language from the Virginia Code which provides that once a Plan is adopted, "it shall control the general and approximate location, character and extent of each feature shown on the plan" and that "no ... public building or structure ... shall be constructed ... unless" the location, character, extent, has been submitted to and approved by the local commission "as being substantially in accord with the adopted comprehensive plan."[9] Va.Code § 15.1–456. It is undisputed that the decision to demolish the old school and build a new school was not submitted to the local commission for approval.

Alternatively, the defendants argue that even if the Plan were mandatory, the decision to demolish the old school and to build a new school does not violate the Plan. The Plan states as an objective that it will "support renovations to Taylor Elementary School," under its heading "Maintain and improve all aspects of public infrastructure." *See* Defs' Ex. 2D (General Plan at p. NP–GHT–4). The defendants argue that demolishing the old school, and building a new school on the same parcel of property is consistent with supporting "renovations." *See* Defs' Memo at n. 12 (citing Webster's Ninth Collegiate Dictionary (1983) definition of "renovate"). Furthermore, the defendants argue that since the land where the School is located will continue to be used as "open and educational space," as indicated on the Plan, that the decision does not violate the terms and conditions of the General Plan. Obvi-

---

9. The defendants argue that if the General Plan is found to be a mandatory requirement, then it would violate the Virginia Constitution which, according to the defendants, prohibits the restriction of the School Board's authority to determine the manner in which school property is used. *See* Art VII Section 7 of the VA Constitution; *County School Bd. of Prince Edward Cnty. v. Griffin*, 204 Va. 650, 133 S.E.2d 565 (1963).

ously, the plaintiff disagrees and contends that the Plan should be read strictly and should be adhered to in all respects, including the renovation notation for Taylor School.

The plaintiff argues that the above described disputes between the parties constitute material factual disputes that should be submitted to a jury. However, whether or not the inquiry is a question of law or question of fact, the more pressing question is which court is most suitable to decide the important, potentially precedential, and certainly debatable questions as to the impact of the Virginia statutes and certain Virginia Supreme Court precedent presented in plaintiff's state law claims. The defendants argue that if the federal claims are dismissed, the Court should also dismiss the state claims without prejudice and if they so choose, the plaintiff can pursue those claims in state court. The defendants contend that the Court's abstention is appropriate since the state claims present "difficult questions of state law bearing on policy problems of a substantial public import whose importance transcends the result of the case at bar." *See Colorado River Water Conservation D. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (an environmental case relying on what is known as the *"Burford* abstention doctrine"); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (finding that district court sitting in equity may decline to exercise jurisdiction if abstention is necessary to show proper regard for state governmental policy).

Title 28 Section 1367(c)(3) provides that when the federal claims are dismissed from a case as a matter of law, the Court may decline to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c); *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.,* 145 F.3d 660, 662 (4th Cir.1998) (denying attempts to establish pendent

jurisdiction); *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 628 (4th Cir.1997) (acknowledging that pendent jurisdiction is discretionary and should be exercised only if in furtherance of judicial economy, convenience and fairness to litigants), *cert. denied,* ―― U.S. ――, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998). Furthermore, 28 U.S.C. § 1367(c)(1) provides that the Court can exercise its discretion and dismiss a claim that raises a complex or novel issue of state law. In this case, both Sections 1367(c)(1) and (c)(3) apply. The usual rule is where the federal claims are dismissed as a matter of law prior to trial "even if not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130.

Relying on the guidance from *Gibbs* and the subsequent Fourth Circuit case law, and its authority under 28 U.S.C. § 1367(c)(1) and (3), this Court declines to exercise its jurisdiction to rule on the controversial state law claims where there are no remaining federal claims. *See Gibbs,* 383 U.S. at 715 & 726, 86 S.Ct. 1130. As the Fourth Circuit held in a case involving the denial of a land use permit, "the courts of Virginia have extensive familiarity and experience with such matters, and ... they should have the initial opportunity to pass on them." *Fralin & Waldron, Inc. v. Martinsville, Va.,* 493 F.2d 481, 482–83 (4th Cir.1979); *see also Pomponio v. Fauquier Cnty. Bd. of Supervisors,* 21 F.3d 1319, 1326 (4th Cir.1994), *cert. denied,* 513 U.S. 870, 115 S.Ct. 192, 130 L.Ed.2d 125 (1994) (finding that "state and local zoning and land use law is particularly the province of the State and the federal courts should be wary of intervening in that area in the ordinary case") (citations omitted). For these reasons, Counts VI and VII are dismissed without prejudice.

V.

For the reasons set forth above, the defendants' motion for summary judgment

as to Counts I and II is hereby GRANT-ED.

Additionally, plaintiff's Count VI and VII, both state law claims, are DISMISSED without prejudice.

The Clerk is DIRECTED to send a copy of this order to all counsel.

It is so ORDERED.